# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| WILFRED OMOLOH and<br>KATHLEEN OMOLOH,<br><br>  Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>  Defendant. | § § § § § § § § § § § § § § | Civil Action No. 4:17-cv-00160-O-BP |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are Plaintiff Wilfred Omoloh's Motion for Temporary Restraining Order/Injunction (ECF No. 11), filed April 12, 2017, and Addendum (ECF No. 13), filed April 13, 2017; Defendant's Motion to Enforce Settlement Agreement with Incorporated Memorandum of Law (ECF No. 16), filed April 24, 2017; Plaintiffs' Attorney Asem Z. Eltiar's Motion for Withdrawal as Counsel (ECF No. 18), filed April 28, 2017; Defendant's Opposition to Plaintiff Wilfred Omoloh's Motion for Temporary Restraining Order/Injunction and Addendum Thereto (ECF No. 19), filed May 3, 2017; and Defendant's Response and Objection to Asem Z. Eltiar's Motion to Withdraw as Counsel for Plaintiffs (ECF No. 20), filed May 3, 2017. After reviewing the pleadings and applicable law, the undersigned RECOMMENDS that United States District Judge Reed O'Connor DENY Plaintiff Wilfred Omoloh's Motion for Temporary Restraining Order/Injunction (ECF No. 11), GRANT Asem Z. Eltiar's Motion for Withdrawal as Counsel (ECF No. 18), GRANT Defendant's Motion to Enforce Settlement Agreement (ECF No. 16), GRANT Defendant's Motion to Enforce Settlement Agreement (ECF No. 16), ORDER Plaintiffs

to execute the settlement agreement and return it to counsel for Bank of America no later than seven (7) days after the date Judge O'Connor's order is issued, and DISMISS this action with prejudice.

**I.  BACKGROUND**

Plaintiffs Wilfred and Kathleen Omoloh (collectively, "the Omolohs") filed an original petition in the 67th Judicial District Court of Tarrant County, Texas, alleging violations of 12 CFR § 1024.41, 12 CFR § 1024.35, and the Texas Debt Collection Act, in addition to claims for breach of contract and wrongful foreclosure against Defendant Bank of America, N.A. ("Bank of America"). All claims relate to the foreclosure of the Omolohs' home ("the Property"). ECF No. 1-1. On February 21, 2017, Bank of America removed the action based on federal question and diversity of citizenship jurisdiction. ECF No. 1. On March 20, 2017, the parties filed their Joint Notice of Settlement and Request for Stay of Case Deadlines, informing the Court that they had reached a settlement agreement and anticipated filing a joint stipulation of dismissal within 30 days of the Notice. ECF No. 9.

Thereafter, Plaintiff Wilfred Omoloh ("Wilfred") filed a *pro se* Motion for Temporary Restraining Order/Injunction (ECF No. 11), requesting in part that his attorney withdraw from the case, and an Addendum to the Motion (ECF No. 13). Pursuant to further order of the Court, the Omolohs' attorney, Asem Zaid Eltiar, filed his Motion to Withdraw as Counsel (ECF No. 18). Bank of America opposed the Motion to Withdraw as Counsel on the grounds that Eltiar should remain as counsel to ensure enforcement of the settlement agreement previously reached between the parties. ECF No. 20.

Bank of America filed its Motion to Enforce Settlement Agreement (ECF No. 16) on April 24, 2017, asserting that the parties agreed to all material terms of the settlement agreement and

requesting that the Court order enforcement of the agreement. Bank of America attached the e-mails chronicling the parties' exchange regarding settlement terms to its Motion as Exhibit D. ECF No. 16-4. The Omolohs' attorney emailed Bank of America's attorney, Connie Jones, on February 28, 2017, stating in pertinent part: "In an effort to resolve this matter, my client has authorized me to ask for $10,000 cash for keys and 30 days to vacate in exchange for dismissal with prejudice of the case and all claims. Please let me know (soon please). Thank you, Asem[.]" *Id.* at 3.

On March 1, 2017 at 10:04 a.m., Attorney Jones responded to the above e-mail with an e-mail entitled "Confidential Settlement Communication" which stated:

> Asem: [Bank of America] has approved a cash for keys agreement, with a 30 day move-out and payment to your clients of $6,000 in exchange for a dismissal with prejudice. The Omolohs will have until 6 PM on Friday, March 31, 2017 to vacate the property. [Bank of America] and the Omolohs wil[l] execute a confidential written settlement agreement in a form acceptable to the parties, which includes a full release of [Bank of America], a provision for non-disparagement of [Bank of America], plus other standard terms. Please let me know if your clients agree to these terms, so that we can notify the proper parties to delay the lockout scheduled for Friday. As soon as I hear from you, I will start drafting the settlement agreement. I look forward to hearing from you at your earliest convenience. Best, Connie Jones[.]

*Id.* at 2-3. At 2:08 p.m. that same day, Attorney Eltiar responded with the following: "My client agrees. In drafting settlement agreement please make the payment payable to 'Asem Eltiar' and have it be mailed to my office. Thank you[,] Asem[.]" *Id.* at 2. Attorney Jones responded: "Great, thanks. I will notify [Bank of America] and Shellpoint's counsel as well. I will need W9's for both plaintiffs and also for your office in order to request the settlement check. Best, Connie[.]" *Id.* As previously stated, the parties filed their Joint Notice of Settlement and Request for Stay of Case Deadlines on March 20, 2017. ECF No. 9.

## II. LEGAL STANDARDS

### A. *Pro Se* Standard

The undersigned notes that Wilfred filed his Motion for Temporary Restraining Order/Injunction *pro se*, although represented by counsel. Therefore, the undersigned will evaluate the Motion and Addendum in accordance with Fifth Circuit precedent affording liberal construction to *pro se* pleadings. Particular to a *pro se* party, courts are to liberally construe the pleadings, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). "[A] *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### B. Temporary Restraining Order / Preliminary Injunction

Although Wilfred requested, in part, that the Court issue a temporary restraining order preventing Bank of America from evicting him or executing its writ of possession, the relief he requests exceeds the fourteen-day limit of a temporary restraining order and is only available through a preliminary injunction. *Neal v. Fed. Bureau of Prisons*, 76 F. App'x 543, 545 (5th Cir. 2003); ECF No. 11 at 2. The undersigned will therefore address Wilfred's request as a motion for preliminary injunction. *See id.*

"A preliminary injunction is an extraordinary remedy." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). In the Fifth Circuit, the four prerequisites for obtaining preliminary injunctive relief are as follows:

> (1) [A] substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). The party seeking injunctive relief must clearly carry the burden of persuasion on all four *Callaway* prerequisites to prevail. *Mississippi Power & Light*, 760 F.2d at 621. Given the extraordinary nature of a preliminary injunction, "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Id.* (citing *State of Texas v. Seatrain International, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975); *Callaway*, 489 F.2d at 576).

### C. Enforcement of Settlement Agreement

"A district court may exercise its discretion to enforce a settlement agreement where one party to a suit has initially agreed to a settlement but later refused to execute a formal agreement reciting the terms of the settlement." *Weaver v. World Fin. Corp. of Texas*, No. CIV.A. 3:09-CV-1124-G, 2010 WL 1904561, at *1 (N.D. Tex. May 12, 2010) (citing *Daftary v. Metro. Life Ins. Co.*, 136 F.3d 137, 1998 WL 30059, at *1 (5th Cir. Jan. 12, 1998) (per curiam)). This Court has both federal question and diversity of citizenship jurisdiction over the claims in the instant case. *See* ECF No. 1. A court exercising diversity jurisdiction applies the law of the state in which the settlement agreement was negotiated and is to be performed. *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987). "More specifically, the enforceability of a settlement agreement in a diversity case tried in a federal district court in Texas is governed by the provisions of Rule 11 [of the] Texas Rules of Civil Procedure ('Texas Rule 11')." *Borden v. Banacom Manufacturing and Marketing, Inc.*, 698 F. Supp. 121, 123 (N.D. Tex. 1988). Under Texas Rule 11, "a settlement agreement is enforceable only if it is (1) 'in writing, signed[,] and filed with the papers as part of the record' or (2) 'made in open court and entered of record.'" *Williamson v. Bank of N.Y. Mellon*, 947 F. Supp. 2d 704, 707 (N.D. Tex. 2013) (citing Tex. R. Civ. P. 11; *Estate*

5

*of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 910 (5th Cir. 2000)). Only the first provision is applicable to this case.

A court exercising federal question jurisdiction, where the substantive rights and liabilities of the parties derive from federal law, applies federal law to the enforcement of settlement agreements. *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984); *Henry v. BG of Dallas Corp.*, No. 3:13-CV-2060-BF, 2014 WL 10919570, at *1 (N.D. Tex. Oct. 8, 2014). Federal law treats a settlement agreement as a contract and requires a manifestation of mutual assent, usually in the form of an offer and acceptance. *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992); *Henry*, 2014 WL 10919570, at *1 (quoting *Chen v. Highland Capital Mgmt., L.P.*, No. 3:10-CV-1039-D, 2012 WL 5935602, at *2 (N.D. Tex. Nov. 27, 2012)). Thus, the dispositive difference between the two standards as applicable to the instant case is that "[f]ederal law does not require settlement agreements to be reduced to writing." *E.E.O.C. v. Phillip Servs. Corp.*, 635 F.3d 164, 167 (5th Cir. 2011) (citing *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981) (per curiam)).

Here, it is appropriate to apply the more exacting Texas Rule 11 standard, as briefed by Bank of America, because the Court is exercising diversity jurisdiction "[a]nd because the settlement at issue was negotiated and to be performed in Texas[.]" *See Oliver v. Kroger Co.*, 872 F. Supp. 1545, 1547 (N.D. Tex. 1994); *see also* 28 U.S.C. § 1652 ("The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."). Therefore, the settlement agreement must be (1) in writing, (2) signed, and (3) filed with the papers as part of the record to be enforced. *See, e.g.*, *Williamson*, 947 F. Supp. 2d at 707-08.

### D. Withdrawal of Counsel

"An attorney may withdraw from representation only upon leave of the court and a showing of good cause and reasonable notice to the client." *Matter of Wynn*, 889 F.2d 644, 646 (5th Cir. 1989) (citation omitted). In the Northern District of Texas, Local Rule 83.12 requires that an attorney seeking to withdraw as counsel file a motion to withdraw, and in such motion

> [S]pecify the reasons requiring withdrawal and provide the name and address of the succeeding attorney. If the succeeding attorney is not known, the motion must set forth the name, address, and telephone number of the client and either bear the client's signature approving withdrawal or state specifically why, after due diligence, the attorney was unable to obtain the client's signature.

L.R. 83.12(a). Ultimately, withdrawal of counsel is a "matter entrusted to the sound discretion of the court." *Matter of Wynn*, 889 F.2d at 646 (citation omitted).

## III. ANALYSIS

### A. Plaintiff Wilfred Omoloh's Motion for Preliminary Injunction Should be Denied.

With respect to Wilfred's Motion for Preliminary Injunction, the undersigned must first consider whether this Court may exercise subject-matter jurisdiction to grant the requested relief in accordance with the Anti-Injunction Act and the *Rooker-Feldman* doctrine. *EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 467 (5th Cir. 2009) (courts must consider *sua sponte* whether jurisdiction is proper even in the absence of an objection). "The Anti-Injunction Act generally prohibits federal courts from interfering with proceedings in state court." *Vines v. Univ. of Louisiana at Monroe*, 398 F.3d 700, 704 (5th Cir. 2005) (citing 28 U.S.C. § 2283). A court may not grant injunctive relief that would enjoin a party "from enforcing a valid extant judgment of a Texas court." *Knoles v. Wells Fargo Bank, N.A.*, 513 F. App'x 414, 416 (5th Cir. 2013). In a similar vein, "the *Rooker-Feldman* doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments" without express congressional authorization. *Union*

*Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004) (internal quotation marks and citation omitted); *see D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The doctrine applies only in "cases brought by state court-losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This includes cases in which "the plaintiff's federal claims are so inextricably intertwined with a state judgment that the federal court is in essence being called upon to review the state court decision." *Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 390-91 (5th Cir. 2012) (quotation marks and citation omitted). Both the Anti-Injunction Act and the *Rooker-Feldman* doctrine bar Wilfred's requested injunctive relief.

Under Texas law, a forcible detainer action permits a court to determine which party has the immediate right to possession of a property. *E.g.*, *Schlichting v. Lehman Bros. Bank FSB*, 346 S.W.3d 196, 198 (Tex. App.—Dallas 2011, pet. dism'd). Where, as here, the requested injunctive relief would restrain a party from executing a writ of possession lawfully obtained by a Texas court, a federal district court lacks jurisdiction to grant such relief. *Knoles*, 513 F. App'x at 416; *Brinson v. Universal Am. Mortg. Co.*, No. CIV.A. G-13-463, 2014 WL 722398, at *3 (S.D. Tex. Feb. 24, 2014). Wilfred's request that this Court prevent Bank of America from executing its writ of possession seeks "injunctive relief that would restore the possession he lost in the earlier litigation." *Knoles*, 513 F. App'x at 416. Foreclosure of the Property through a substitute trustee's sale occurred on May 5, 2015; Bank of America acquired a judgment in its favor in a state court forcible detainer action on September 20, 2016; and a final judgment of possession was rendered in favor of Bank of America on January 10, 2017. ECF No. 19 at 3-4. Thus, Wilfred's request for an injunction to prevent Bank of America "from any eviction or forcible detainer" seeks relief that

falls outside of this Court's jurisdiction under the Anti-Injunction Act and the *Rooker-Feldman* doctrine. *Alexander v. Carrington Mortg. Servs., LLC*, No. 4:15-CV-332-Y, 2015 WL 12533062, at *1 (N.D. Tex. June 29, 2015); *Grace v. Everhome Mortg. Co.*, No. 3:13-CV-4563-B, 2014 WL 12531164, at *1 (N.D. Tex. May 28, 2014); *Ave. v. HSBC Bank USA, Nat'l Ass'n*, No. 3:13-CV-1868-B, 2013 WL 12126286, at *1 (N.D. Tex. May 31, 2013). Therefore, the undersigned RECOMMENDS that Wilfred's Motion for Preliminary Injunction be DENIED.

**B. The Parties' Settlement Agreement Should be Enforced.**

To be enforceable, the settlement agreement at issue must be (1) in writing, (2) signed, and (3) filed with the papers as part of the record. *See, e.g.*, *Williamson v. Bank of N.Y. Mellon*, 947 F. Supp. 2d 704, 707 (N.D. Tex. 2013).

    i.   The Settlement Agreement is in Writing.

As is present in the instant case, an e-mail exchange between the parties "which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony" is sufficient to satisfy the "in writing" requirement of Texas Rule 11. *Id.* at 708-09 (quoting *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (quoting *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978))). Although the Texas Supreme Court has not yet decided whether an e-mail exchange meets the requirements of Texas Rule 11, the *Williamson* court held that an e-mail exchange would be sufficient under Texas law after making an "*Erie* guess" and determining "as best it can what the state high court would most likely decide." *Id.* at 708 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 317 (5th Cir. 2002)).

The *Williamson* court, in enforcing a settlement agreement, determined that the Texas Supreme Court would hold that an e-mail exchange satisfies the "in writing" requirement because (1) in *Padilla v. LaFrance*, the Texas Supreme Court held that a series of letters met the requirement; (2) the Texas Uniform Electronic Transactions Act ("TUETA") states that an electronic record satisfies a law requiring a record to be in writing, Tex. Bus. & Com. Code § 322.007(c); (3) a Texas appeals court held "that a series of emails, among other pieces of evidence, 'confirmed a settlement agreement between the parties'[,]" *Green v. Midland Mortg. Co.*, 342 S.W.3d 686, 691 (Tex. App.—Houston [14th Dist.] 2011, no pet.); and (4) another court in the Northern District of Texas "has concluded that an email exchange later signed by an attorney was a valid writing under [Texas] Rule 11[,]" *Dymatize Enters. Inc. v. Maximum Human Performance, Inc.*, No. 3:09-CV-0046-O-BH, 2010 WL 4788573, at *5 (N.D. Tex. Sept. 20, 2010), *report and recommendation adopted,* No. 3:09-CV-046-O, 2010 WL 4788571 (N.D. Tex. Nov. 17, 2010). *Id.* at 708-09. The undersigned agrees that the Texas Supreme Court would likely hold that a series of e-mails, setting forth all essential elements of the agreement and complete in every material detail, satisfies the "in writing" requirement.

Because the series of e-mails is a written agreement, the e-mails must be complete in every material detail and contain all essential elements of the agreement in order to be enforced. *Padilla*, 907 S.W.2d at 460. The agreement memorialized in the e-mail exchange provides that (1) Bank of America will pay $6,000 to the Omolohs; (2) the Omolohs will dismiss their claims against Bank of America with prejudice; (3) the confidential settlement agreement will include a full release, provision for non-disparagement, and other standard terms; and (4) the Omolohs will vacate the Property no later than 6:00 p.m. on March 31, 2017. ECF No. 16-4 at 2. The Omolohs, through their attorney, agreed in full to these terms, and the undersigned finds that the settlement agreement

is complete in every material detail and contains all essential elements. *See Padilla*, 907 S.W.2d at 460. Thus, the Texas Rule 11 "in writing" requirement is satisfied by the e-mail exchange between the parties.

      ii.   The Settlement Agreement is Signed.

The TUETA contains a parallel electronic signature provision to its electronic record provision, which states that "[i]f a law requires a signature, an electronic signature satisfies the law." Tex. Bus. & Com. Code § 322.007(d). "An electronic signature, in turn, is 'an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.'" *Williamson*, 947 F. Supp. 2d at 709 (citing Tex. Bus. & Com. Code § 322.002(8)). Similar to the above analysis, "[t]he [undersigned's] best *Erie* guess is that the Texas Supreme Court would consider the relevant emails in this case to be signed under TUETA and [Texas] Rule 11." *Id.* Each attorney's signature is a manually typed name, thus representing the very "electronic symbols attached to a record and executed with the intent to sign the record as contemplated by TUETA." *Id.* at 710-11 ("[T]he Court makes an *Erie* guess that the Texas Supreme Court would consider both a typed name and a signature block in an email to be electronic signatures under TUETA."). Therefore, the undersigned finds that the attorneys' typed names on their e-mails suffice to satisfy the "signature" requirement of Texas Rule 11. *Id.* at 710 (collecting cases in which courts have held that typed names at the end of e-mails constitute signatures "under various states' statutes of frauds and enactments of the Uniform Electronic Transactions Act ('UETA'), which is the source of TUETA").

      iii.   The Settlement Agreement is Filed with the Papers as Part of the Record.

Finally, the settlement agreement meets the "part of the record" requirement of Texas Rule 11 because it was filed as an exhibit to the Motion to Enforce Settlement Agreement. *Oliver v.*

*Kroger Co.*, 872 F. Supp. 1545, 1549 (N.D. Tex. 1994). "Both federal and state courts in Texas enforce agreements filed contemporaneously with motions seeking their enforcement." *Williamson*, 947 F. Supp. 2d at 712 (citations omitted). Because the settlement agreement between the parties satisfies each element of Texas Rule 11, the undersigned finds that it should be enforced. Accordingly, the undersigned RECOMMENDS that Judge O'Connor GRANT Bank of America's Motion to Enforce Settlement Agreement, ORDER the Omolohs to execute the settlement agreement and return it to counsel for Bank of America no later than seven (7) days after the date Judge O'Connor's order is issued, and DISMISS this action with prejudice.

### C. Plaintiffs' Counsel's Motion to Withdraw Should be Granted.

Asem Eltiar, counsel for the Omolohs, asserts that good cause exists for his withdrawal as counsel because Wilfred has evinced his desire to proceed *pro se* instead of executing the settlement agreement, and both of the Omolohs refused to return executed settlement documents as Mr. Eltiar requested. ECF No. 18 at 1-2. Mr. Eltiar further represents that he is unable to communicate with Plaintiff Kathleen Omoloh entirely because she is presently in a remote region of Africa without phone or internet access, and that although Wilfred agreed to sign the motion to withdraw, he did not return the signed motion to Mr. Eltiar by the stipulated date and time. *Id.* The Omolohs' refusal to return a signed and executed settlement agreement, which they were obligated to execute, constitutes good cause for counsel's withdraw. *Weaver v. World Fin. Corp. of Texas*, No. CIV.A. 3:09-CV-1124G, 2010 WL 1904561, at *3 (N.D. Tex. May 12, 2010). Accordingly, the undersigned RECOMMENDS that Mr. Eltiar's Motion for Withdrawal as Counsel be GRANTED.

## IV. CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that United States District Judge Reed O'Connor DENY Plaintiff Wilfred Omoloh's Motion for Temporary Restraining Order/Injunction (ECF No. 11), GRANT Asem Z. Eltiar's Motion for Withdrawal as Counsel (ECF No. 18), GRANT Defendant's Motion to Enforce Settlement Agreement (ECF No. 16), ORDER Plaintiffs to execute the settlement agreement and return it to counsel for Bank of America no later than seven (7) days after the date Judge O'Connor's order is issued, and DISMISS this action with prejudice.

Asem Eltiar is **ORDERED** to send a copy of this findings, conclusions, and recommendation to Plaintiffs via e-mail, first class mail, and certified mail return-receipt requested. It is further **ORDERED** that Mr. Eltiar submit a notice to the Court evidencing a copy of service via electronic mail and proof of mailing through the United States Postal Service within **three (3) days** of the date of this findings, conclusions, and recommendation.

A copy of this findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district

court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed May 16, 2017.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE